UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ERICA KIMBERLY CURRY, | CASE NO. 1:18CV1067 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| ANDREW M. SAUL,[1] COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | MEMORANDUM OPINION & ORDER |
| Defendant. | |

Plaintiff Erica Kimberly Curry ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her application for Disability Insurance Benefits ("DIB"). ECF Dkt. #1. In her brief on the merits, Plaintiff asserts that the administrative law judge's ("ALJ") residual functional capacity ("RFC") for her is not supported by substantial evidence because the ALJ failed to properly: (1) evaluate the opinions of her treating providers; and (2) consider her testimony and credibility. ECF Dkt. #13. For the following reasons, the Court AFFIRMS the decision of the ALJ and DISMISSES Plaintiff's case in its entirety WITH PREJUDICE.

I.  **FACTUAL AND PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on February 13, 2015 alleging disability beginning February 26, 2014 due to a lower lumbar injury, upper back injury, and nerve damage in both legs. ECF Dkt. #10 ("Tr.") at 111, 203, 228.[2] The Social Security Administration ("SSA") denied her application. *Id.* at 111-123, 156-264. Plaintiff requested a hearing before an ALJ, and the ALJ held

---

[1] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security, replacing acting Commissioner Nancy A. Berryhill.

[2] All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than when the Transcript was compiled. This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

a hearing on February 13, 2017, where Plaintiff was represented by counsel and testified. *Id*. at 39, 124-129. A vocational expert ("VE") also testified. *Id*. at 39.

On April 3, 2017, the ALJ issued a decision denying Plaintiff's application for DIB. Tr. at 12-25. Plaintiff requested that the Appeals Council review the ALJ's decision and the Appeals Council denied her request for review on March 7, 2018. *Id*. at 1-6, 308-310.

On May 8, 2018, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. She filed a merits brief on September 19, 2018 and Defendant filed a merits brief on November 30, 2018. ECF Dkt. #s 13, 16. Plaintiff filed a reply brief on December 14, 2018. ECF Dkt. #17.

## II. RELEVANT PORTIONS OF ALJ'S DECISION

On April 3, 2017, the ALJ issued a decision finding that while Plaintiff had worked after her alleged disability onset date, that work did not rise to the level of substantial gainful activity, and therefore Plaintiff had not engaged in substantial gainful activity since her onset date. Tr. at 14. The ALJ further found that since that date, Plaintiff had the severe impairments of lumbar spine degenerative disc disease ("LDDD") with radiculopathy, thoracic spine DDD ("TDDD"), obesity, depressive disorder, anxiety disorder, and post-traumatic stress disorder ("PTSD"). *Id*. He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Subpart P, Appendix 1. *Id.* at 16-17. After considering the record, the ALJ found that Plaintiff had the RFC to perform sedentary work with the following limitations: occasional balancing, crouching, crawling, stooping, bending, kneeling, and climbing stairs; never climbing ladders, ropes, or scaffolds; no exposure to unprotected heights or moving machinery; the ability to change from sitting, walking, to standing at the workstation every 30 minutes, remaining at the changed position for 30 minutes before changing back to a previous position; and work in a low-stress job defined as occasional decision-making, occasional judgment required, and occasional changes in the work setting. *Id.* at 18.

Based upon Plaintiff's age, education, work experience, the RFC, and the VE's testimony, the ALJ determined that Plaintiff could not return to her past relevant work as a bus driver or nurse assistant, but she could perform jobs existing in significant numbers in the national economy, such

as an office clerk, information clerk, or an accounting clerk. Tr. at 23-24. In conclusion, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, and she was not entitled to DIB from February 26, 2014 through the date of the decision. *Id.*

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings

of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (internal citations omitted).

**V.    LAW AND ANALYSIS**

    **A.    TREATING PROVIDERS' OPINIONS**

        **1.    DR. WULFF**

Plaintiff first asserts that substantial evidence does not support the ALJ's physical RFC for her because he failed to provide good reasons for not affording controlling weight and only some weight to the opinion of Dr. Wulff, her treating orthopedic physician. ECF Dkt. #13 at 11-15. For the following reasons, the Court finds that the ALJ provided good reasons for affording less than controlling weight to Dr. Wulff's opinion and substantial evidence supports that determination.

An ALJ must give controlling weight to the opinion of a treating source if he finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ decides to discount or reject a treating physician's opinion,

he must provide "good reasons"[3] for doing so. Social Security Rule ("SSR") 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore "be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *8 (6th Cir. 2010). That Court has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *7 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed. App'x 661, 665 (6th Cir. 2004). Substantial

---

[3] The Court notes that the SSA has changed the treating physician rule effective March 27, 2017. *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence." Https://www.ssa.gov. The SSA will no longer give any specific evidentiary weight to medical opinions, including affording controlling weight to medical opinions. Rather, the SSA will consider the persuasiveness of medical opinions using the factors specified in their rules and will consider the supportability and consistency factors as the most important factors.

evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

In his February 28, 2017 medical source statement, Dr. Wulff indicated that he began treating Plaintiff in 2012 and continued to treat her. Tr. at 1702. He further noted that her symptoms were chronic low back pain aggravated by motion and he explained that she had a dorsal column stimulator implanted in her back in October of 2014. *Id.* Dr. Wulff opined that Plaintiff's chronic low back pain limited her to: sitting for 45 minutes at one time before having to get up; standing for 30 minutes at one time before having to sit down or walk around; sitting and standing/walking for a total of about 2 hours per 8-hour workday; a job that allows shifting positions at will such as sitting, standing or walking; lifting and carrying up to 10 pounds frequently and 20 pounds occasionally; occasionally twisting, stooping/bending; never climbing ladders and rarely climbing stairs; needing unscheduled breaks daily during an 8-hour workday for 5 minutes of rest; being off-task more than 20% of an 8-hour workday; having good and bad days; and being absent more than 4 days per month due to her impairments or treatment. *Id.* Dr. Wulff further indicated that Plaintiff had been so limited since July 4, 2009, the date that she was injured at work as a bus operator when she tried to help a passenger onto the bus and that person fell onto her, injuring her back and foot. *Id.*; ECF Dkt. #13 at 4; ECF Dkt. #16 at 3.

In affording Dr. Wulff's opinion less than controlling weight and only "some" weight, the ALJ stated in his decision that the opinion was "not entirely supported by the claimant's treatment history, improvement with treatment, and negative clinical findings and was somewhat inconsistent with the claimant's activities." Tr. at 21. The ALJ explained that Dr. Wulff's opinion that Plaintiff was so limited since July of 2009 was contrary to the fact that Plaintiff engaged in substantial gainful activity for several years after July 2009 and she had worked as a bus operator after that date. *Id.*, citing Tr. at 228-229, 246. The ALJ cited to Plaintiff's work history and disability reports where she indicated that she worked as a bus operator from 2005-2014. *Id.* The work history and disability reports that the ALJ cited also show that Plaintiff stated that she stopped working on February 26, 2014 and she worked as a bus operator from October of 2006 to February of 2014. *Id.*

at 228-229. The ALJ further explained that some of Dr. Wulff's own treatment notes are contrary to the restrictions that Dr. Wulff opined on February 28, 2017 because treatment notes dated only five months earlier in September 2016 show that he released Plaintiff to resume full-duty work with no restrictions as of September 21, 2016. Tr. at 21, citing Tr. at 1428. This treatment note, dated September 20, 2016, was signed by Dr. Wulff and his physician assistant, and it indicated that Plaintiff had a normal clinical examination that day, she was diagnosed with chronic pain syndrome, and she was told to continue treating with New York Spine and Wellness Center and her primary care physician. *Id*. Dr. Wulff further noted that he would contact a representative about reprogramming the spinal cord stimulator so that Plaintiff could use the stimulator when she wanted. *Id.* Dr. Wulff also indicated in that note that Plaintiff was working at that time. *Id.*

The ALJ also referred back to evidence that he had discussed earlier in his decision for additional reasons to afford less than controlling and only some weight to Dr. Wulff's opinion. Tr. at 21. The ALJ reviewed clinical findings from Dr. Cambareri, an orthopedic doctor, dated February of 2014, in which Plaintiff complained of worsening back pain, burning legs and numb feet. *Id*. at 21, citing Tr. at 334-335. Dr. Cambareri's physical findings indicated that Plaintiff was in no acute distress, she had normal coordination, a normal gait, normal walking on heels and toes, and she had the ability to climb up on the examination table without help, and she ambulated well. *Id.* at 335. The ALJ further cited to Dr. Cambareri's note that Plaintiff had normal motor strength, normal sensation to light touch, and full range of motion in her hips. *Id*. at 21, citing Tr. at 335. The ALJ also cited to Dr. Cambareri's note that Plaintiff was totally disabled for worker's compensation purposes and out of work for four weeks or until she saw Dr. Wulff. *Id*. The ALJ also referred to numerous other treatment notes in 2015 and 2016 which showed essentially normal clinical findings of extremity strength, intact sensation, a normal gait, and full ranges of motion. Tr. at 19-20, citing Tr. at 335-336, 885, 1427, 1432, 1517, 1657.

In addition, the ALJ reviewed the clinical findings of agency consultative examiner, Dr. Ganesh, who examined Plaintiff on May 27, 2015 and found that Plaintiff was in no acute distress, she had a normal gait, used no assistive devices, she could not heel or toe walk, she could squat at 50%, but she had a normal stance and needed no help getting on or off of the examination table. *Id*.

-7-

at 19, citing Tr. at 925. He found that Plaintiff had full flexion and extension in her cervical spine, normal strength in her extremities, no muscle atrophy, limited spinal flexion, but negative straight leg raising. *Id.* at 19, citing Tr. at 926. The ALJ noted Dr. Ganesh's opinion that Plaintiff had no gross limitations in sitting, standing and walking, and she had moderate limitations in lifting, carrying, pushing and pulling. *Id.*

The ALJ further reviewed the May 2014 MRI of Plaintiff's thoracic spine, which showed a small protrusion at T7-T8 with no significant interference with the caliber of the spinal cord and her permanent implantation of the spinal cord stimulator in October of 2014. Tr. at 19, citing Tr. At 326. The ALJ noted Plaintiff's report in November of 2014 that the stimulator was helping her pain. Tr. at 19, citing Tr. at 315. He also cited to a May 28, 2015 x-ray of Plaintiff's lumbosacral spine which showed mild degenerative spondylosis at L4-L5, an old minimal compression fracture of L2, thoracolumbar levoscoliosis, a transitional L5 vertebral body, and the spinal cord stimulator in place. *Id.* at 15, citing Tr. at 928.

The ALJ also reviewed the conclusions of Plaintiff's doctors who at varying times opined that Plaintiff had a 67% and 50% temporary impairment for worker's compensation purposes. Tr. at 19. He noted that Dr. Wulff concluded a number of times that Plaintiff had a 67% temporary impairment for worker's compensation purposes. Tr. at 19, citing Tr. at 323, 326, 332, 942. He further noted a 50% impairment found by doctors at the New York Spine and Wellness Center in March of 2015 and September of 2016. *Id.* at 19, citing Tr. at 547-550, 1641. While the ALJ acknowledged these findings, he explained that he gave them only some weight because they were not accompanied by a function by function assessment or by specific limitations, and he therefore found them of limited usefulness. *Id.* at 19.

Further, the ALJ cited to Plaintiff's reports of her activities, which included driving, caring for her six children, shopping, cooking two to three time a week, cleaning three times a week, doing laundry three to four times per week, and going to church. Tr. at 19, citing Tr. at 925. The ALJ also noted Plaintiff's reports of pain relief with the spinal cord stimulator and with massage. Id. at 19, citing Tr. at 1671. Plaintiff had reported on May 15, 2015 that she felt a 75% reduction in her pain when she received massages. *Id.* at 19, citing Tr. at 1671. The ALJ also noted that Plaintiff

indicated on January 30, 2017, right before Dr. Wulff issued his medical source statement, that she was going to work as a school bus driver in two weeks. *Id*. at 20, citing Tr. at 1688.

The Court finds that these reasons as set forth by the ALJ for affording less than controlling weight and only some weight to Dr. Wulff's February 28, 2017 opinion constitute good reasons. They more than adequately explain why the ALJ attributed less than controlling weight to that opinion. Further, substantial evidence supports the ALJ's reasons for attributing less than controlling and only some weight to that opinion. The ALJ sufficiently considered the required factors for determining the weight to give the opinion and explained his reasons for doing so. The proper standard of review in this case is whether substantial evidence supports the ALJ's decision and even if substantial evidence exists to the contrary, this Court cannot reverse the ALJ's decision if substantial evidence supports his determination. Substantial evidence supports the ALJ's treatment of Dr. Wulff's opinion in this case and he provided good reasons for affording less than controlling weight to that opinion.

### 2. TREATING SOCIAL WORKER FORESTI

Plaintiff also asserts that the ALJ erred by granting only little weight to the opinion of her Treating Licensed Clinical Social Worker ("LCSW"), Mr. Foresti. ECF Dkt. #13 at 18-19. On February 7, 2017, LCSW Foresti completed a medical source statement indicating that he saw Plaintiff every 1 to 2 weeks for 45-50 minutes. *Id.* at 1608. He indicated her diagnosis as chronic severe PTSD and her prognosis as poor. *Id.* LCSW Foresti opined Plaintiff's symptoms as loss of interest in almost all activities, decreased energy, thoughts of suicide, feelings of guilt or worthlessness, emotional lability, generalized persistent anxiety, difficulty thinking and concentrating, persistent disturbances of mood or affect, emotional withdrawal or isolation, memory impairment, and sleep disturbance. *Id.*

LCSW Foresti was asked to determine Plaintiff's abilities to perform work-related tasks on a daily basis with her impairment and symptoms, and definitions were given to him for his choices of "seriously limited, but not precluded," "unable to meet competitive standards," and "no useful ability to function, an extreme limitation." Tr. at 1609. LCSW Foresti opined that Plaintiff's mental abilities and aptitude were "unlimited or very good" for: understanding, remembering, and carrying

out very short and simple instructions; asking simple questions or requesting assistance; being aware of normal hazards; interacting appropriately with the general public; maintaining socially appropriate behavior; and using public transportation. *Id.* He further opined that Plaintiff had "limited but satisfactory" abilities to: remember work-like procedures; work with others without being unduly distracted; making simple work-related decisions; and adhere to basic standards of neatness and cleanliness. *Id.*

LCSW Foresti also opined that Plaintiff was "seriously limited, but not precluded" in the areas of: maintaining attention for two hour segments; maintaining regular attendance and being punctual; sustaining an ordinary routine without special supervision; completing a normal workday and workweek without interruptions from psychologically-based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; dealing with normal work stress; and traveling in unfamiliar places. Tr. at 1609. He explained that the medical findings supporting his limitations included Plaintiff's severe anxiety and depression, exacerbated by her severe pain, which could preclude her ability to function correctly "and/or safely." *Id.* at 1610. LCSW Foresti also indicated that Plaintiff had problems with her concentration, persistence or pace that resulted in her inability to complete tasks in a timely manner at home and her impairments caused mainly "bad" days. *Id.* He stated that Plaintiff had not been seen in several months. *Id.*

In response to the question of whether Plaintiff had repeated episodes of deterioration or decompensation at work or in a work-like setting, LCSW Foresti responded, "cannot be working." Tr. at 1610. When asked the percentage of time during an 8-hour workday that Plaintiff would be off-task, LCSW responded that she would be off-task more than 20%. *Id*.

In addressing LCSW Foresti's medical source statement, the ALJ afforded the opinion "little weight," finding that it was "inconsistent with the claimant's treatment history, negative clinical findings, and activities." Tr. at 22. The ALJ noted gaps in Plaintiff's treatment with LCSW Foresti, LCSW's mostly consistent normal clinical examinations of Plaintiff, Plaintiff's noted improvement on medication, and her reported activities of caring for her 6 children, going to church, and shopping three to five times per week. *Id.*

-10-

The Court notes the proper Social Security Ruling ("SSR") effective at the time of the filing of the instant case was SSR 06-03p[4], which addressed how the agency considered opinions from sources that were not "acceptable medical sources" and opinions from other agencies. SSR 06-03p, rescinded by Fed. Reg. Notice Vol. 82, No. 57, Page 15263, effective Mar. 27, 2017. SR 06-03p provided in relevant part that licensed clinical social workers were considered "[m]edical sources who are not 'acceptable medical sources.' SSR 06-03p. Nevertheless, SSR 06-03p indicated that the ALJ should reflect that he or she has considered the opinions of non-acceptable medical sources:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-03p.

The ALJ appropriately considered LSCW Foresti's opinion and provided sufficient discussion of the evidence for attributing his opinion only "little weight." Tr. at 21-22. Immediately preceding this conclusion, the ALJ, in a separate section of his decision labeled "Mental," discussed Plaintiff's mental impairments and her treatment for them. Tr. at 22-21. He cited to Plaintiff's testimony at the hearing and her reports to providers that she had trouble being around people, getting along with others, problems paying attention, and an inability to complete tasks. *Id.* at 21, citing Tr. at 64, 240-245, 263. However, the ALJ noted that Plaintiff was able to care for her children, she had a new partner, she was able to drive, cook, clean, do laundry, shop, go to church, and go to doctor appointments. *Id.* at 21, citing Tr. at 238-240, 875, 925. The ALJ also indicated that providers described Plaintiff as cooperative, bright/friendly, and pleasant. *Id.* at 21, citing Tr. at 873, 1693.

The ALJ also noted that Plaintiff had limited treatment and gaps in her treatment. Tr. at 22. He cited to Plaintiff's therapy treatment with LCSW Foresti beginning before her onset date in 2013 which was accompanied by her receipt of medication from her primary care doctor for her mental

---

[4]Effective March 27, 2017, SSR 06-03p has been rescinded by Fed. Reg. Notice Vol. 82, No. 57, page 15263.

-11-

health conditions in November of 2013. Tr. at 22, citing Tr. at 892, 1417. The ALJ indicated that Plaintiff reported improvement on the medication in March of 2014 and then she did not see LCSW Foresti from March 2014 until August of 2015. *Id.* at 22, citing Tr. at 1413, 1421. Therapy notes from LCSW Foresti on December 13, 2013 indicate that he observed that Plaintiff presented as much less depressed, although her anxiety was high, and her status was improved. *Id*. at 1415. He indicated on December 20, 2013, that Plaintiff was coping well despite some challenges at home and he rated her status as improved. *Id.* at 1414. His March 20, 2014 therapy notes indicate that Plaintiff's primary care doctor increased her Zoloft and she reported that it was helping her. *Id.* at 1413. The next therapy note in the record is dated August 14, 2015, and LCSW Foresti indicated on that date that Plaintiff presented with a moderately depressed mood, low self-esteem, irritability, tearful affect, high anxiety, anxious feelings and agoraphobia. *Id*. at 1412. He noted that Plaintiff was reporting chronic pain and she reported typical signs of chronic, severe trauma, such as nightmares, chest pains, sweating, shortness of breath, and other symptoms. *Id*. September 25, 2015 treatment notes indicate that LCSW Foresti reported that Plaintiff had a depressed mood and high anxiety as she was having continued serious back pain and issues regarding her house and the inability to afford repairs. *Id.* at 1411. He referred her to resources for help. *Id.* Plaintiff treated with LCSW Foresti through the end of 2015 and into January of 2016, but then, as pointed out by the ALJ, there are no records of treatment with LCSW Foresti again until June 30, 2016, when Plaintiff presented to him with high depression, no suicidal ideations, moderate anxiety and agoraphobia. *Id*. at 22, citing Tr. at 1629-1630. Plaintiff had reported some family matters that were causing increased symptoms. *Id*. at 1630. As the ALJ also pointed out, no further treatment notes in the record show treatment beyond June 30, 2016 with LCSW Foresti. *Id*. at 22.

The ALJ also pointed out that in January of 2017, Plaintiff reported during an intake assessment that she was unable to work due to her chronic back pain. Tr. at 1690. She also indicated that she was starting a job driving a school bus in two weeks. *Id*. at 1688.

The Court finds that the ALJ's decision reflects that he sufficiently considered the opinion of LCSW Foresti and adequately explained the reasons for the weight that he gave to that opinion. Further, substantial evidence supports that determination.

-12-

## B. SUBJECTIVE SYMPTOMS AND RFC

Plaintiff further asserts that the ALJ lacks substantial evidence for his RFC for her because he failed to adequately consider and articulate his reasons for discounting her testimony regarding her subjective symptoms and limitations as required by SSR 16-3p. ECF Dkt. #13 at 18-20. For the following reasons, the Court finds that the ALJ applied the proper legal standards in evaluating Plaintiff's subjective symptoms and limitations and in determining her RFC. Further, the Court finds that the ALJ adequately considered and addressed Plaintiff's subjective symptoms and substantial evidence supports his decision to discount her symptoms and to support his RFC determination.

A claimant's RFC is an assessment of the most that a claimant "can still do despite h[er] limitations." 20 C.F.R. § 404.1545(a)(1). An ALJ must consider all of a claimant's impairments and symptoms and the extent to which they are consistent with the objective medical evidence. 20 C.F.R. § 404.1545(a)(2)(3). The claimant bears the responsibility of providing the evidence used to make a RFC finding. 20 C.F.R. §§ 404.1545(a)(3). However, the RFC determination is one reserved for the ALJ. 20 C.F.R. § 404.1546(c); *Poe v. Comm'r of Soc. Sec.*, 342 Fed.Appx. 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician."). SSR 96-8p provides guidance on assessing RFC in social security cases. SSR 96-8p. The Ruling states that the RFC assessment must identify the claimant's functional limitations and restrictions and assess his or her work-related abilities on a function-by-function basis. *Id*. Further, it states that the RFC assessment must be based on all of the relevant evidence in the record, including medical history, medical signs and lab findings, the effects of treatment, daily living activity reports, lay evidence, recorded observations, effects of symptoms, evidence from work attempts, the need for a structured living environment and work evaluations. *Id.*

The social security regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 404.1529, SSR 16-3p[5]. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2)

---

[5] SSR 16-3p superseded SSR 96-7p effective March 28, 2016.

objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.; Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir.1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038–1039 (6th Cir.1994); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir.1986). Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See id.* Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the symptoms of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039–40.

In his decision in the instant case, the ALJ limited Plaintiff to sedentary work with the following additional restrictions: occasional balancing, crouching, crawling, stooping, bending, kneeling and climbing stairs; never climbing ladders, ropes or scaffolds; no exposure to unprotected heights or moving machinery; ability to change from sitting to walking to standing every 30 minutes, remaining at the changed position for 30 minutes before changing back to a previous position; and to work in a low-stress job defined as occasional decision-making, occasional judgment required, and occasional changes in the work setting. Tr. at 19. The ALJ thereafter cited to the correct regulation in stating that he had considered all of Plaintiff's symptoms and the extent to which the

symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence according to 20 C.F.R. § 404.1529. *Id*. He further cited to the two-step process set forth in SSR 16-3p for evaluating Plaintiff's symptoms and he indicated that he had considered the opinion evidence in the record in accordance with 20 C.F.R. § 404.1527. *Id.*

Plaintiff asserts that the ALJ failed to cite to specific evidence in discounting her symptoms as his "only explanation" was his finding "that the severity of her symptoms was 'not entirely consistent with the medical evidence and the other evidence in the record.'" ECF Dkt. #13 at 19, quoting Tr. at 23. The Court finds that this was not the ALJ's "only explanation." In reviewing the evidence relating to Plaintiff's physical impairments, the ALJ began by stating that Plaintiff had alleged pain, numbness in her feet, sleep difficulties, a need to frequently change positions, medication side effects, and limited abilities to bend, stand, lift, walk, sit, climb stairs, kneel, squat, reach, and use her hands. Tr. at 18. He thereafter noted however, that Plaintiff "had limited positive objective medical findings, improved with treatment, and engaged in quite a few activities." *Id*. The ALJ then reviewed each of these items, first setting forth objective medical findings showing that at numerous examinations, Plaintiff could climb onto an examination table without assistance, ambulated well, normal gait, full range of motion in her hips, and had normal extremity and grip strengths. *Id.*, citing Tr. at 335, 925, 1432, 1646.

Plaintiff also contends that the ALJ pointed to only positive objective medical findings that supported his determination, even though treatment notes existed throughout the record which showed that she had limited ranges of motion, an antalgic or hesitant gait, and tenderness to palpation in her paraspinal muscles. ECF Dkt. #13 at 22, citing Tr. at 396, 404, 412, 458, 464, 470, 476, 490, 496, 504, 511, 575, 580, 593, 596, 614, 617, 623, 629, 1670, 1677. The Court finds that the ALJ did cite to other than positive objective medical evidence as to Plaintiff's her impairments. Tr. at 15. In his Step Two findings, the ALJ included a separate section for each of Plaintiff's impairments and cited to Plaintiff's lumbar spine DDD with radiculopathy, an EMG showing left L5 lumbar radiculopathy, a September 2012 MRI which showed DDD at L4-L5 with broad based disc protrusion, the implantation of the spinal cord stimulator, and numerous clinical findings after

Plaintiff's disability onset date showing "positive straight-leg raising tests, limited range of motion, tenderness, and a mildly antalgic gait." Tr. at 15, citing Tr. at 326, 329, 332, 335, 549, 554, 558, 563, 567, 572, 577, 926, 1441-1443, 1631-1686. Moreover, the ALJ noted Plaintiff's pain allegations and allegations of numbness in her feet, trouble sleeping, needing to change positions, and her limited abilities to bend, stand, lift, walk, sit, climb stairs, kneel, squat, reach, and use her hands. *Id*. at 18.

In addition, as Respondent points out, nearly all of the notes cited by Plaintiff in her brief as showing contrary findings actually pre-date her alleged onset date of February 26, 2014 in this case. *See* Tr. at 396, 404, 412, 458, 464, 470, 476, 490, 496, 504, 511, 580, 593, 596, 614, 617, 623, 629. Many of the treatment notes that the ALJ cited to occurred after the alleged onset date and they showed relatively normal clinical findings. Further, the ALJ pointed out that Plaintiff had reported improvement on medication, with nerve blocks, and with use of the spinal cord stimulator, and she later reported that she had not used her stimulator in some time. Tr. at 18-20, citing Tr. at 313, 326, 335, 885, 926, 1425, 1428, 1432, 1517-1518, 1603, 1631, 1674. The ALJ also cited to Plaintiff's indication on August 26, 2016 that her pain was controlled with medication, and she desired to return to work, which her primary care physician did not oppose. Tr. at 20, citing Tr. at 1470.

Plaintiff also disputes the ALJ's finding that her pain improved with treatment, citing to numerous records in which she reported worsening pain and that medications and her spinal cord stimulator were not helping. ECF Dkt. #13 at 20, citing Tr. at 547, 575, 589, 599, 605, 609, 623, 625, 627, 629, 924, 1660, 1665, 1670, 1677. However, again, many of the citations by Plaintiff predated her disability onset date. Tr. at 589, 599, 605, 609, 623, 625, 627, 629. Further, the other records that Plaintiff cited to which document her complaints of pain and sometimes the ineffectiveness of treatment, the ALJ acknowledged these complaints of disabling pain. Tr. at 18. He even limited Plaintiff to sedentary work with further limitations on her abilities to balance, crouch, crawl, stoop, bend, kneel, climb stairs, ladders, ropes and scaffolds, to be exposed to unprotected heights and moving machinery, and to change positions. *Id*. at 17-18. In discounting

her complaints of disabling pain and more extreme limitations, however, the ALJ cited to the numerous records showing relatively mild clinical findings and Plaintiff reporting relief with medication, nerve blocks, and the spinal cord stimulator. *Id.* at 18-20. He also noted records where Plaintiff indicated that she had not used her spinal cord stimulator in months and she stated that her pain was only mild. *Id.* at 20. He further cited to Plaintiff's activities of driving, shopping, and caring for her six children, her doctor releasing her to full duty work with no restrictions in September of 2016, and Plaintiff reporting that she had worked driving a bus until 2014. Thus, even though evidence to the contrary may exist to support a conclusion opposite to that of the ALJ, the standard of review is whether the ALJ applied the proper legal standards and whether substantial evidence supports his determination to discount Plaintiff's complaints of pain and resulting limitations and the ALJ's RFC. The Court finds that the ALJ did apply the proper legal standards in discounting Plaintiff's complaints of pain and in determining her RFC and substantial evidence supports these determinations.

Finally, Plaintiff challenges part of the ALJ's Step Three finding where he determined that she was only moderately limited in adaptations and managing herself, one of the four "B" criteria for evaluating whether a claimant meets or medically equals the Listings for some of the mental health impairments. ECF Dkt. #13 at 20. At Step Three, the clamant has the burden of proving that she has an impairment or combination of impairments that meet or medically equal a listed impairment. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant meets or medically equals a listed impairment; she is conclusively presumed disabled. If she does not, the evaluation proceeds to the fourth step. 20 C.F.R. §§ 404.1520(d)-(e), 416.920(d)-(e). "If ... the record raises a substantial question as to whether the claimant could qualify as disabled under a listing, the ALJ should discuss that listing." *Sheeks v. Comm'r of SSA*, 544 Fed. App'x 639, 641 (6th Cir. 2013) (quotation and alterations omitted); *see also Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. App'x 411, 415–416 (6th Cir. 2011). However, "the ALJ need not discuss listings that the applicant clearly does not meet, especially when the claimant does not raise the listing before the ALJ." *Sheeks*, 544 Fed. App'x at 641; *see also Hutchinson v. Bowen*,

787 F.2d 1461, 1463 (11th Cir. 1986) (stating that, when an ALJ "did not explicitly state that the appellant's impairments were not contained in the listings, such a determination was implicit in the ALJ's decision" because he proceeded to Step Four).

In his decision, the ALJ specifically addressed Listing 12.04 for evaluating depressive, bipolar and related disorders, Listing 12.06 for evaluating anxiety and obsessive-compulsive disorders, and Listing 12.15 for evaluating trauma- and stressor-related disorders. Tr. at 16. These Listings have three paragraphs, A, B, and C, a variation which must be satisfied in order to meet the severity of each Listing. Listing 12.00A2. A claimant must show that she meets the severity of one of these specified Listings by showing that she meets both of the impairment-specific medical criteria in paragraph A and the functional limitations criteria in paragraph B, or both the criteria in paragraph A and paragraph C. 20 C.F.R. pt. 404, Subpt. P, App. 1 §§ 12.00(A), 12.04, 12.06, 12.15. The common functional limitations criteria in paragraph B of Listings 12.04, 12.06, and 12.15 require that Plaintiff show that her impairment(s) resulted in an "extreme limitation of one or marked limitation of two, of the following areas of mental functioning: (1) understand, remember or apply information; (2) interact with others; (3) concentrate, persist or maintain pace; (4) adapt or manage oneself." 20 C.F.R. pt. 404, Subpt. P, App. 1 §§ 12.04(B), 12.06(B), 12.15(B).

In reviewing specific mental impairment Listings, the ALJ identified those Listings and outlined the "B" criteria for meeting or medically equaling these Listings, which consists of four areas, understanding, remembering, or applying information, interacting with others, concentrating, persisting or maintaining pace, or adapting or managing oneself. Tr. at 16. The ALJ explained that in order to satisfy one of these Listings, Plaintiff would have to have an extreme limitation in one of the "B" criteria or two marked limitations of the four "B" criteria. *Id.* He determined that Plaintiff had no limitations in the first three areas of understanding, remembering, or applying information, in interacting with others, or in concentrating, persisting or maintaining pace. *Id.* at 16-17. In the fourth area of adapting or managing oneself, the ALJ found that Plaintiff had moderate limitations. *Id.* at 17.

Plaintiff initially appeared to challenge this moderate finding in adapting or managing onself in her initial merits brief, asserting that the ALJ mischaracterized her testimony as to her ability to manage herself. ECF Dkt. #13 at 20. She indicates that the ALJ mischaracterized her testimony concerning her ability to meet her own personal needs, except for getting assistance putting on her socks. *Id.,* citing Tr. at 52, 57, 924. Plaintiff noted that she consistently indicated that she relied upon her children to help her with her nearly all of her daily living activities, including helping her with chores, tying her shoes, bathing, and shopping. *Id*.

However, in her reply brief, Plaintiff asserts that she "did not address the paragraph B criteria as an argument that Plaintiff met or medically equaled a listing, but rather as an additional example or how the ALJ had mischaracterized the record to support his finding that Plaintiff was not disabled." ECF Dkt. #17 at 4. Accordingly, the Court need not provide an in-depth analysis as to whether the ALJ erred in determining that Plaintiff's mental health conditions met or medically equaled a listing impairment since she does not make this challenge.

As to whether the ALJ mischaracterized the evidence, the Court's review of the "adapting or managing oneself" part of the ALJ's paragraph B criteria evaluation shows that the ALJ did not err in his summary of her testimony concerning her ability to manage herself, insofar as her mental impairments are concerned. The ALJ specifically found that Plaintiff "meets her own personal care needs, but needs assistance putting on socks." Tr. at 17. He cited to Plaintiff's testimony in support. *Id.* In her testimony, Plaintiff stated that her children help her with many activities, including helping her get in and out of the tub, and they help her "get dressed with my socks or my stockings and they help me tie my shoes. They help me a lot, as far as bending." *Id*. at 52. Paragraph B is used to evaluate a claimant's mental disorder and the degree of limitation resulting from mental disorders, not physical disorders. See 12.00F1 ("We use the paragraph B criteria, in conjunction with a rating scale (see 12.00F2), to rate the degree of your limitations. We consider only the limitations that result from your mental disorder(s)." Moreover, even if this finding was a mischaraterization, the ALJ relied upon numerous other instances to support his finding of only a moderate limitation in Plaintiff's abilities to adapting or managing herself in evaluating her mental

disorders. He cited to her initial expression of suicidal ideation, but with no hospitalization and subsequent denials of suicidal ideation. Tr. at 17. He also cited to Plaintiff's reports that she was able to care for her six children, she repeatedly exhibited normal/appropriate moods and affect at doctor visits, and she got along well with her medical providers. *Id.* He also noted that Plaintiff was able to handle the stressors of moving, living in a shelter, having her car break down, and some of her children being hospitalized. *Id*.

For the above reasons, the Court finds that the ALJ applied the proper legal standards in evaluating Plaintiff's symptoms and resulting limitations, and in evaluating her RFC. The Court further finds that the ALJ set forth sufficient reasons for the determinations that he made and substantial evidence supports those determinations.

## VI. CONCLUSION

For the above reasons, the Court orders that the decision of the ALJ is hereby AFFIRMED and Plaintiff's complaint is hereby dismissed in its entirety WITH PREJUDICE.

Date: August 23, 2019   */s/George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE